# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF LOUISIANA

**UNITED STATES OF AMERICA**                                **CRIMINAL ACTION**

**VERSUS**                                                                    **NO. 15-144**

**SUSANTHA WIJETUNGE, ET AL.**                              **SECTION I**

## ORDER AND REASONS

The Court has pending before it a motion[1] to suppress evidence filed by all defendants.[2] The government opposes the motion.[3] For the following reasons, the motion is **DENIED IN PART** and **DEFERRED IN PART** as set forth below.

## BACKGROUND

Defendants, Susantha Wijetunge ("Susantha") and Manula Wijetunge ("Manula") (collectively, "the Wijetunges"), are a married couple who own defendant, VJ Discount, Inc., through which they operated a convenience store and check-cashing business in Kenner, Louisiana ("VJ Discount").[4] The Wijetunges own three other defendant entities which they used for holding rental property: VJ & Manu Properties, LLC; VJ & Manu Properties, II, LLC; and VJ & Manu Properties, III, LLC (collectively, "the Property Defendants").[5]

On March 6, 2015, a Department of Homeland Security agent signed a sixty-one-page

---

[1]R. Doc. No. 45.
[2]Although counsel for defendant, Manula Wijetunge, has since sought and obtained leave to withdraw, R. Doc. No. 104, counsel joined in the motion to suppress when it was filed, R. Doc. No. 45, at 2.
[3]R. Doc. No. 60.
[4]R. Doc. No. 1, ¶¶ 11, 13.
[5]R. Doc. No. 1, ¶ 15.

affidavit in support of an application for warrants to search the convenience store and the Wijetunge

residence, including the garage, and to seize evidence.[6] The relevant portions of the affidavit will

be discussed below in greater detail. Generally, the affidavit outlined an investigation allegedly

revealing that the Wijetunges committed money laundering by knowingly cashing tax refund checks

fraudulently obtained by others, and evaded currency transaction reporting requirements. The

affidavit also alleged that Susantha and Manula filed false tax returns on their own behalf and on

behalf of VJ Discount, Inc., and failed to file foreign bank reports. Searches of defendants' place of

business and home were conducted pursuant to warrants executed on March 10, 2015, and items

were seized pursuant to the warrants.[7]

On July 23, 2015, the grand jury returned a thirty-two-count superseding indictment against

the Wijetunges, VJ Discount, Inc., and the Property Defendants.[8]

---

[6]R. Doc. No. 45-3, at 2, 61.

[7]R. Doc. No. 45-5, at 1.

[8]R. Doc. No. 67.Count one of the superseding indictment charges that between no later than on or about January 1, 2010, and continuing through at least June 4, 2015, Susantha, Manula, and the Property Defendants conspired with others known and unknown (1) to knowingly conduct and attempt to conduct financial transactions which involved the proceeds of mail and wire fraud and which were designed in whole or in part to conceal and disguise the nature, location, source, ownership, and control of the proceeds, in violation of 18 U.S.C. § 1956(a)(1)(B)(i); (2) to knowingly conduct and attempt to conduct financial transactions involving the proceeds of mail and wire fraud and which were designed in whole or in part to avoid a federal transaction reporting requirement, in violation of 18 U.S.C. § 1956(a)(1)(B)(ii); and (3) to knowingly engage, and attempt to engage, in monetary transactions by, through, or to a financial institution in criminally-derived property of a value greater than $10,000, such property having been derived from mail and wire fraud in violation of 18 U.S.C. § 1957.

Counts two through four of the superseding indictment charge Susantha, Manula, and VJ Discount, Inc., with filing currency transaction reports containing material omissions or misstatements of fact concerning the true identity of the individuals involved in the financial transaction and the amount of cash, in violation of 31 U.S.C. § 5324(a)(2), (d); 31 C.F.R. §§ 1010.100, .311, .312, .313; and 18 U.S.C. § 2.

Counts five through nineteen of the superseding indictment charge Susantha, Manula, and VJ Discount, Inc., with failing to file currency transaction reports in violation of 31 U.S.C. §

## LAW & ANALYSIS

Defendants move to suppress evidence obtained pursuant to the search warrants executed at VJ Discount and at the Wijetunges' home.[9] They contend that evidence should be suppressed because: (1) the affidavit in support of the search warrants "relied on materially misleading statements, misrepresentations, and was based primarily on information supplied by an unreliable informant – and material facts were not disclosed to the Magistrate Judge to allow her to judge the credibility of any of the informants;" (2) "the search and seizure warrants were overly broad and entirely lacking in probable cause to search Mr. and Mrs. Wijetunge's home, automobiles, personal and family computers, or personal safe deposit boxes;" and (3) agents seized items outside the scope of the warrant at the home, used excessive during the execution of the warrant at the home, and violated Rule 41 of the Federal Rules of Criminal Procedure.[10] The Court will address each contention in turn.

---

5324(a)(1), (d); 31 C.F.R. §§ 1010.100, .311, .313; and 18 U.S.C. § 2.

Counts twenty through twenty-two of the superseding indictment charge Susantha, Manula, and VJ Discount with knowingly and willfully failing to file "Reports of Foreign Bank and Financial Accounts," in violation of 31 U.S.C. §§ 5314, 5322(a); 31 C.F.R. § 1010.350, 1010.316(c)-(d); and 18 U.S.C. § 2.

Counts twenty-three through twenty-five of the superseding indictment charge Susantha and Manula with making and subscribing false individual income tax returns, in violation of 26 U.S.C. § 7206(1).

Counts twenty-six through twenty-eight of the superseding indictment charges Manula with making and subscribing false income tax returns for an S corporation, i.e., VJ Discount, Inc., in violation of 26 U.S.C. § 7206(1).

Counts twenty-nine through thirty-one of the superseding indictment charge Susantha with willfully aiding and assisting in the preparation of false income tax returns for an S corporation for VJ Discount, Inc., in violation of 26 U.S.C. § 7206(2).

Count thirty-two charges Susantha and Manula with conspiring to defraud the United States by concealing their true income and assets in connection with a Free Application for Federal Student Aid ("FAFSA"), in violation of 18 U.S.C. § 371.

[9]R. Doc. No. 45-2, at 1-2.

[10]R. Doc. No. 45-2, at 3-4; R. Doc. No. 86, at 6; R. Doc. No. 101.

A.      **Purported Deficiencies in the Affidavit**

1.)      **Applicable Standards**

"In considering a Fourth Amendment challenge to a seizure conducted pursuant to a search warrant, [the Court] ask[s] first whether the seizure falls within the good-faith exception to the exclusionary rule" based upon good-faith reliance on the warrant. *United States v. Davis*, 226 F.3d 346, 350-51 (5th Cir. 2000) (citing *United States v. Cherna*, 184 F.3d 403, 407 (5th Cir. 1999)). "Under the good-faith exception, 'evidence obtained by law enforcement officials acting in objectively reasonable good-faith reliance upon a search warrant is admissible in the prosecution's case-in-chief, even though the affidavit on which the warrant was based was insufficient to establish probable cause.'" *Id.* at 351 (quoting *United States v. Shugart*, 117 F.3d 838, 843 (5th Cir. 1997)). Only if the Court "conclude[s] that the good-faith exception does not apply" does the Court "proceed to ask whether the magistrate who issued the warrant had a substantial basis for believing there was probable cause for the search." *Id.* (citing *Cherna*, 184 F.3d at 407).[11]

"There are four situations in which the *Leon* good-faith exception does not apply," only one of which defendants directly assert in their motion: "the good-faith exception does not apply when the magistrate issuing the warrant was intentionally or recklessly misled by the affiant on whom he relied." *Id.* at 351 n.1 (citing *Cherna*, 184 F.3d at 407).[12] A defendant must show that the agent

---

[11]In some circumstances, such as "when the case involves a novel question of law whose resolution is necessary to guide future action by law enforcement officers and magistrates," it may be appropriate to reach the question of probable cause notwithstanding good-faith reliance on the warrant. *See United States v. Neal*, 182 F. App'x 366, 369 (5th Cir. 2006) (quotation marks omitted). Defendants do not contend that this is such a case.

[12]R. Doc. No. 45-2, at 24-25. The other three situations are: "if the magistrate wholly abandoned his judicial role and acted as a part of the law enforcement team, rather than as a check on its zeal," "if the warrant was based on an affidavit so lacking in indicia of probable cause as to render belief in its existence entirely unreasonable," or if "the warrant itself [is] so

"either deliberately or recklessly misled the magistrate and that without the falsehood there would not be sufficient matter in the affidavit to support the issuance of the warrant." *Id.* at 351. "The necessary falsehood can be perpetrated by omission as well as commission, but the omission must be of information that is not only relevant, but dispositive, so that if the omitted fact were included, there would not be probable cause." *Id.* A defendant must establish the misstatement or omission by a preponderance of the evidence. *See, e.g.*, *United States v. Looney*, 532 F.3d 392, 394 (5th Cir. 2008).

To obtain a hearing on a motion to suppress, a defendant must make a "substantial preliminary showing" that "(1) the affiant knowingly and intentionally, or with reckless disregard for the truth, made a false statement in the warrant affidavit and (2) the remaining portion of the affidavit is insufficient to support a finding of probable cause." *United States v. Arispe*, 328 F. App'x 905, 906 (5th Cir. 2009). If the motion to suppress is based on omissions, a defendant must make "'a strong preliminary showing that the affiant excluded critical information from the affidavit with the intent to mislead the magistrate'" and, that if the information had been included, the affidavit would have been insufficient to establish probable cause. *Id.* at 907 (quoting *United States v. Tomblin*, 46 F.3d 1369, 1377 (5th Cir. 1995)).

Attempting to attack the affidavit and avoid applicability of the good-faith exception, defendants assert: (1) that the affidavit contains misrepresentations and omissions with respect to the reliability of the identified cooperating defendants; (2) that the affidavit contains

---

facially deficient, for instance, so lacking in particularity, that an officer would be unreasonable to rely on it." 226 F.3d at 351 n.1 (quotation marks and citations omitted). Defendants arguably invoke the facial deficiency exception which will be addressed below in connection with their "overbreadth" arguments.

misrepresentations of allegedly corroborative recordings; and (3) that without those misrepresentations or omissions, the affidavit does not establish probable cause of the alleged conspiracy to commit money laundering and structuring.

### 2.)   Purported Misrepresentations or Omissions Regarding Informant Credibility

The affidavit sets forth information purportedly obtained from six cooperating defendants.[13] The affidavit states that several cooperating defendants pleaded guilty to criminal charges and "ultimately agreed to cooperate with the government, including [cooperating defendants two through six]."[14] As to all six cooperating defendants, the affidavit states:

> Each of CD#1, CD#2, CD#3, CD#4, CD#5, and CD#6 have admitted to defrauding the United States by filing false income tax returns, and some have admitted to committing aggravated identity theft. Each of these individuals has cooperated with the government in an effort to mitigate his/her criminal exposure. Before their guilty pleas and cooperation, certain of these individuals made false exculpatory statements or minimized their involvement in the scheme to defraud the United States. In addition, each of these individuals has admitted to being illegally present in the United States, and their immigration histories reveal that several of these individuals had previously lied to government agents regarding their immigration statuses.[15]

The affidavit expressly states that cooperating defendants two through six pleaded guilty to charges.[16] The affidavit is silent as to whether charges were ever filed against cooperating defendant one. The affidavit also details efforts to objectively corroborate the statements of the cooperating defendants.[17]

Information bearing on an informant's reliability, such as criminal history or cooperation with the government in exchange for favorable treatment, may be relevant to a determination of

---

[13]R. Doc. No. 45-3, ¶ 8.
[14]R. Doc. No. 45-3, ¶ 39.
[15]R. Doc. No. 45-3, ¶ 40.
[16]R. Doc. No. 45-3, ¶¶ 49, 51, 54, 60, 67.
[17]*See generally* R. Doc. No. 45-3, ¶¶ 41-70.

probable cause. However, defendants do not cite any cases suggesting that every piece of such information is categorically required to be included in an affidavit in support of an application for a warrant, or that omission of some such information automatically invalidates a warrant.[18] *See Franks v. Delaware*, 438 U.S. 154, 165 (1978) (explaining that "[i]f an informant's tip is the source of information, the affidavit must recite *some* of the underlying circumstances from which the informant concluded that relevant evidence might be discovered, and *some* of the underlying circumstances from which the officer concluded that the informant" was credible) (emphasis added).

Defendants generally contend that the aggregate discussion of the cooperating defendants did not "allow the Magistrate Judge to assess their individual reliability."[19] In addition, defendants contend that the affidavit (1) misrepresented the status of cooperating defendant one by referring to him as a defendant when he has never been charged with a crime for his conduct, and (2) omitted

---

[18]The Fifth Circuit has applied the good-faith exception to affirm denials of motions to suppress where relevant information pertaining to an informant's credibility was omitted. For example, in *United States v. Arispe*, a search warrant was issued on the basis of an affidavit which included information from a witness but omitted information concerning the witness's criminal history, the fact that she made statements while in police custody, and that she had obtained her information while engaging in criminal behavior. *See* 328 F. App'x at 906. The district court denied a motion to suppress without granting a hearing and the Fifth Circuit affirmed, concluding that the defendant had "not shown that [the agent] knowingly and intentionally, or with reckless disregard for the truth, omitted material information from the affidavit, nor did he show that if information concerning [the informant's] criminal history had been included, the affidavit would have been insufficient to establish probable cause." *Id.* As the Fifth Circuit held, the defendant failed to show that the agent intentionally or recklessly misled the magistrate by omitting that information; rather, the informant's criminal history and custodial status did "not automatically render her statements untrue," and "any uncertainty regarding the veracity of [her] statements was compensated for by the detail of the statements she provided and the internal consistency of the statement and surrounding facts." *Id.*; *see also United States v. Richardson*, 478 F. App'x 82, 88-89 (5th Cir. 2012) (affirming denial of motion to suppress evidence obtained pursuant to a search warrant notwithstanding that the affiant "excluded information that might reflect negatively on [the informant's] reliability").

[19]R. Doc. No. 45-2, at 6.

specific information bearing directly on his reliability.

First, the only arguable affirmative misrepresentation that defendants articulate is the affidavit's reference to cooperating defendant one as a defendant. The government concedes that the individual referred to as cooperating defendant one has not been charged for his alleged role in the conspiracy.[20] While cooperating defendant one is not, strictly speaking, a defendant in any case, defendants in this case have not made a substantial showing that describing him as such was intentionally or recklessly misleading. Describing cooperating defendant one as a defendant instead of an informant is a distinction with little, if any, material difference. Defendants have also not demonstrated how such information was provided with the intent to mislead the U.S. Magistrate Judge. Furthermore, the affidavit forthrightly states which cooperating defendants pleaded guilty to charges and cooperating defendant one is specifically not included in that group.[21]

Second, with respect to purported omissions of information relevant to the reliability of the cooperating defendants in general, and cooperating defendant one in particular, the affidavit certainly *could* have included more information.[22] For example, the cooperating defendants could have been described individually, and a prior conviction of cooperating defendant one or the benefit he received for his cooperation could have been disclosed.[23] Such information would have been relevant to the Magistrate's determination of probable cause. However, the test is not only whether the omitted information is relevant, but whether it is "*dispositive*, so that if the omitted fact were included, there would not be probable cause." *Davis*, 226 F.3d at 351 (emphasis added); *see also*

---

[20]R. Doc. No. 76-1, at 4 (filed under seal).
[21]R. Doc. No. 45-3, ¶¶ 39, 49, 51, 54, 60, 67.
[22]R. Doc. No. 45-2, at 7; R. Doc. No. 76, at 2-4 (filed under seal).
[23]R. Doc. No. 76-1, at 20 (filed under seal).

*Arispe*, 328 F. Appx. at 907 ("Unless the defendant makes a strong preliminary showing that the affiant excluded *critical* information from the affidavit with the intent to mislead the magistrate, the Fourth Amendment provides no basis for a subsequent attack on the affidavit's integrity.") (quoting *United States v. Tomblin*, 46 F.3d 1369, 1377 (5th Cir. 1995)).

The affidavit in support of the search warrant did disclose *some* information tending to undermine the reliability of the cooperating defendants, including prior false statements to law enforcement as well as the fact that they participated in a criminal conspiracy to obtain fraudulent tax refund checks.[24] Defendants have not articulated how the incremental effect of adding the omitted information to the information that was already presented to the U.S. Magistrate Judge would have changed the probable-cause analysis in any meaningful way. Furthermore, the affidavit cites analysis tying the cooperating defendants to checks cashed at VJ Discount,[25] objective evidence linking the cashing of specific checks to a failure to file required currency transaction reports,[26] and objective evidence such as receipts establishing that Susantha charged an enhanced fee for cashing tax refund checks.[27]

Defendants proffer innocent alternative explanations which allegedly undermine the existence of probable cause. However, defendants have not demonstrated that the agent either deliberately or recklessly misled the U.S. Magistrate Judge. The omitted information allegedly bearing on the cooperating defendants' reliability is not "dispositive" and it does not defeat the showing of probable cause found by the U.S. Magistrate Judge. The Court further concludes that

---

[24] R. Doc. No. 45-3, ¶¶ 40, 49, 51, 54, 60, 67.
[25] R. Doc. No. 45-3, ¶ 42.
[26] R. Doc. No. 45-3, ¶¶ 46-47.
[27] R. Doc. No. 45-3, ¶¶ 24, 30.

defendants have not made the requisite strong preliminary showing which would entitle them to a hearing as to the alleged omissions and misrepresentations set forth herein.

### 3.) Purported Mischaracterization of Video and Audio Evidence

Defendants also argue that the affidavit misrepresents or mischaracterizes several pieces of surveillance evidence. On two occasions, cooperating defendant one was sent undercover into VJ Discount to cash checks while equipped with audio and video recording equipment.[28] As to both visits, the audio was difficult to understand.[29] The affidavit candidly states that the "quality of the recordings" only allowed the affiant to corroborate "that a meeting and transaction took place" between cooperating defendant one and Susantha.[30]

Defendants contend that the affidavit overstates the degree to which the recordings corroborate cooperating defendant one's statements.[31] The government responds that the affidavit accurately describes the poor quality of the recordings and the limited extent to which they corroborate that a transaction took place.[32] The government is correct; defendants point to no specific overstatement of the significance of the video recordings in the affidavit, let alone a deliberate misrepresentation or reckless falsehood, and the Court can identify none.

Defendants also raise various other complaints about the inferences suggested in the affidavit. Generally, they complain that the agent did not give them the benefit of the doubt, "took every opportunity to interpret vague statements in a manner that implied some sort of wrongdoing, and

---

[28]R. Doc. No. 45-3, ¶¶ 26, 36.
[29]R. Doc. No. 45-3, ¶¶ 29, 37.
[30]R. Doc. No. 45-3, ¶¶ 26, 37.
[31]R. Doc. No. 45-2, at 9.
[32]R. Doc. No. 60, at 3.

presented the information to the Magistrate Judge as conclusive fact of criminal activity when the evidence was far from it."[33] However, as the government responds, defendants "cite no law stating that the government is required to include every potentially innocent interpretation of the facts in an affidavit supporting a search warrant application."[34] Having reviewed the affidavit, the Court concludes that it plainly distinguishes between facts and the inferences that the affiant suggests are to be drawn from those facts.[35] Under these circumstances, defendants' disagreement with the inferences drawn from particular facts is not a basis to find the good-faith exception inapplicable.[36]

**B.    Overbreadth**

Defendants also make arguments under the umbrella of "overbreadth," as they claim that the warrant did not sufficiently particularize the things to be seized. "Overbreadth claims focus on the Fourth Amendment's requirement that warrants 'particularly describe[] the place to be searched, and the persons or things to be seized.'" *United States v. Patel*, 485 F. App'x 702, 711 n.5 (5th Cir. 2012) (quoting U.S. Const. amend. IV). Defendants' arguments are not persuasive.

The good-faith exception applies to the execution of a warrant that does not sufficiently

---

[33]R. Doc. No. 45-2, at 10.

[34]R. Doc. No. 60, at 16.

[35]*See, e.g.*, R. Doc. No. 45-3, ¶ 31 ("In addition, VJ charged an inflated fee of 8.5%, which your affiant submits is evidence that VJ knew the transactions involved additional risk of detection."). As another example, defendants complain that a statement attributed to Susantha represents him "insinuating" culpable knowledge. R. Doc. No. 45-2, at 11 (citing R. Doc. No. 45-3, ¶ 35). Fairly read, the affidavit does not confuse or conflate Susantha's statement with the significance attached to it by the agent.

[36]Defendants also suggest that the government "may have used deceptive tactics to consensually obtain information and documents through civil audits to be used in the criminal investigation it was conducting, without informing Defendants of the true criminal nature of the investigation." R. Doc. No. 45-2, at 17. Defendants have not otherwise developed this argument or submitted any evidence which would compel a conclusion that improper deceptive tactics were used.

particularize the things to be searched for and seized unless the warrant was "so defective that an officer would be unreasonable to rely on it." *Davis*, 226 F.3d at 352. Defendants have failed to make a substantial showing of such an obvious lack of particularity. The warrant in this case is at least as particularized as others that have been approved by the Fifth Circuit; as was the case in *Davis*, the twenty-two categories of evidence listed in this search warrant "are delineated in as much detail as is practicable for investigating the kind of fraud indicated in this case," and "proof that [defendants] had made money on which [they] owed taxes would require review of broad categories of [their] records." *Id.* In short, defendants' "overbreadth" argument does not warrant suppression and defendants have failed to establish their entitlement to a hearing as to that issue.[37]

## C.    Issues Regarding Execution of the Warrant

Finally, defendants raise a number of issues related to the execution of the warrant and the items seized.

### 1.)    Unreasonable Force

First, defendants contend that the government used "excessive force and intimidation in

---

[37]Defendants also assert under the heading of "overbreadth" that the affidavit did not establish probable cause to search their home or their safety deposit boxes, which argument is not an overbreadth claim. *See* R. Doc. No. 45-2, at 18-20. At any rate, the argument lacks merit; even if the affidavit was insufficient to establish probable cause to search the house or safety deposit boxes, defendants do not make a substantial showing that the agents conducting the search did not act "'in objectively reasonable good-faith reliance upon [the] search warrant" or articulate a reason why the good-faith exception does not apply. *See Davis*, 226 F.3d at 351 & n.1 (quoting *Shugart*, 117 F.3d at 843). Further, even if the good-faith exception did not apply and it was necessary to examine the existence of probable cause to search defendants' home and safety deposit boxes, the motion would still be denied. Defendants simply ignore the portions of the affidavit asserting that defendants (1) underreported income on their taxes, (2) failed to make required filings relative to foreign bank accounts, (3) received financial statements pertinent to both allegations at their home, and that (4) the safety deposit boxes were at banks where defendants had accounts to which criminal proceeds had been traced and from which defendants withdrew substantial amounts of cash. R. Doc. No. 45-3, ¶¶ 72, 102-04, 115.

executing the warrant in the early morning hours of a family's home."[38] However, in a supplemental brief defendants abandon any argument "that these facts, standing alone, require suppression."[39] At any rate, use of unconstitutionally excessive force does not warrant suppression of evidence obtained during an otherwise lawful search. *See United States v. Garcia-Hernandez*, 659 F.3d 108, 114 (1st Cir. 2011); *United States v. Watson*, 558 F.3d 702, 704-05 (7th Cir. 2009).

### 2.)      Overbreadth of the Search

Second, defendants contend that in executing the search, agents took advantage of an overbroad warrant.[40] This merely rehashes defendants' overbreadth argument which was considered and rejected above.

### 3.)      Non-Compliance with Federal Rule of Criminal Procedure 41

Third, defendants contend that evidence should be suppressed because the government violated Rule 41 of the Federal Rules of Criminal Procedure by not timely or upon request providing them with a complete copy of the warrant for the search of the house or the business.

Rule 41(f)(1)(C) of the Federal Rules of Criminal Procedure states that "[t]he officer executing the warrant must give a copy of the warrant and a receipt for the property taken to the person from whom, or from whose premises, the property was taken or leave a copy of the warrant and receipt at the place where the officer took the property." However, "neither the Fourth Amendment nor Federal Rule of Criminal Procedure 41" requires that an "an executing officer must present the property owner with a copy of the warrant *before* conducting his search." *United States v. Grubbs*, 547 U.S. 90, 98-99 (2006) (emphasis added); *see also Groh v. Ramirez*, 540 U.S. 551,

---

[38]R. Doc. No. 45-2, at 21.
[39]R. Doc. No. 86, at 7.
[40]R. Doc. No. 45-2, at 21.

562 n.5 (2004) (same). The Supreme Court has also noted the "absence of a constitutional requirement that the warrant be exhibited at the outset of the search, or indeed until the search has ended." *Grubbs*, 547 U.S. at 99 (internal quotation marks omitted). On the other hand, the Supreme Court has observed that it is an unanswered question "[w]hether it would be unreasonable *to refuse a request to furnish the warrant* at the outset of the search when . . . an occupant of the premises is present and poses no threat to the officers' safe and effective performance of their mission." *Id.* (emphasis added).

In the Fifth Circuit, violations of Rule 41(f) "'are essentially ministerial in nature and a motion to suppress should be granted only when the defendant demonstrates legal prejudice or non-compliance with the rule was intentional or in bad faith.'" *See United States v. Charles*, 883 F.2d 355, 357 (5th Cir. 1989) (quoting *United States v. Marx*, 635 F.2d 436, 442 (5th Cir. 1981)).[41] Legal prejudice and intentional non-compliance are alternative grounds for suppressing evidence based on a Rule 41 violation. *See United States v. Neal*, 182 F. App'x 366, 371 (5th Cir. 2006). However, the burden is on the defendant seeking suppression of evidence based on a Rule 41(f) violation to establish legal prejudice or intentional or bad-faith non-compliance with the rule. *See id.*; *see also Marx*, 635 F.2d at 441.

In *Marx*, an agent obtained a search warrant for a defendant's suitcases, and another agent searched the suitcases after being notified by telephone that the warrant had been issued. *See* 635 F.2d at 440. The warrant was not present at the search and it was not delivered to the defendant until the next day. *See id.* at 440-41. The Fifth Circuit affirmed the district court's denial of a motion to

---

[41]*Charles* and *Marx* cited former Federal Rule of Criminal Procedure 41(d), which was redesignated as 41(f) in 2002. *See Neal*, 182 F. App'x at 371 n.4.

suppress, concluding, with respect to the prejudice prong, that (1) "[f]ailure to deliver a copy of the search warrant to the party whose premises were searched until the day after the search does not invalidate a search in the absence of a showing of prejudice," (2) prejudice means that a defendant is "subjected to a search that might not have occurred or would not have been so abrasive had the rule been followed," and (3) that defendants did not meet their "burden of proof in challenging the validity of the execution or service of the search warrant." *Id.* at 441.

In *Charles*, "the officers who raided [defendant's] compound received word about the warrant's issuance over the police radio [but] did not have in hand a copy of the warrant to present." 883 F.2d at 357. Relying on *Marx*, the Fifth Circuit affirmed a denial of a motion to suppress because the defendant had not made a showing of prejudice. *See id.*

In *United States v. Gantt*, a Ninth Circuit case, the facts were as follows:

> Upon entering Gantt's residence, the agents did not present her with a copy of the warrant. Instead, they directed her to sit in the hallway while they conducted a three-hour search. The agents did not show Gantt the warrant under the authority of which they had invaded her privacy until Gantt herself asked to see the search warrant. The agents responded by showing her the face of the warrant but not Attachment A [describing the items to be seized]. Gantt did not specifically ask to see Attachment A. After concluding their search, the agents gave Gantt an inventory of items seized and left a copy of the warrant with Attachment A behind in the hotel room. Before Gantt could examine the copy of the warrant left in the hotel room, however, the agents arrested her and took her to an FBI office. Only at the FBI office was Gantt shown the entire warrant including attachment A.

194 F.3d 987, 996 (9th Cir. 1999), *overruled in part on other grounds* by *United States v. W.R. Grace*, 526 F.3d 499, 506 (9th Cir. 2008). The district court suppressed the evidence obtained pursuant to the search, and the Ninth Circuit affirmed. First, the Ninth Circuit concluded that "by failing to present Gantt with a complete copy of the warrant at the outset of the search of her apartment," the government violated Rule 41, which it construed to require service at the outset of

the search absent "exigent circumstances." *Id.* at 1000-01.[42] The Ninth Circuit also noted that showing Gantt the warrant without the attachment describing the things to be seized failed to satisfy Rule 41 as well. *See id.* at 1000 n.1.[43]

The Ninth Circuit then noted that "[v]iolations of Rule 41[f] do not usually demand suppression" and that "technical violations . . . require suppression only if there was a deliberate disregard of the rule or if the defendant was prejudiced." *Id.* at 1005 (quotation marks omitted).[44] The Ninth Circuit noted that multiple copies of the warrant were present during the search, agents did not show Gantt the complete warrant "even after she asked to see it," and the government "provided no explanation or justification for the agents' failure." *Gantt*, 194 F.3d at 1005.[45] On the basis of those facts, the Ninth Circuit concluded that the Rule 41(f) violation was deliberate and that suppression was appropriate. *See id.*

In this case, according to a series of affidavits by defendants and their children, and despite alleged repeated requests to see a copy of the warrant, defendants were not presented with a copy of the search warrant at their home until two to three hours after the search began.[46] Defendants also assert that when a copy of the search warrant for the home was provided, it was incomplete because

---

[42]*Gantt's* holding that "[a]bsent exigent circumstances, Rule 41(d) requires service of the warrant at the outset of the search on persons present at the search of their premises," 194 F.3d at 1001, has been expressly contradicted by the Supreme Court. *See Grubbs*, 547 U.S. at 98-99; *Groh*, 540 U.S. at 562 n.5.

[43]The Ninth Circuit held that finding a Rule 41 violation on those facts was consistent with the Fifth Circuit's *Charles* opinion. *See id.* at 1004 & n.10.

[44] This is essentially the same standard for suppression applied in the Fifth Circuit. *See Charles*, 883 F.2d at 357.

[45]The Fifth Circuit has distinguished *Gantt* as applying a different burden of proof than the Fifth Circuit. *See Neal*, 182 F. App'x at 371 ("In this circuit, however, as discussed above, it is the defendant, not the government, who bears the burden of demonstrating intentional non-compliance by the searching officers.").

[46]R. Doc. No. 45-5, at 1; R. Doc. No. 101-1, at 3-4; R. Doc. No. 101-6, at 2-3.

it did not include the attachments describing the place to be searched or the items to be seized.[47] Susantha also states in an affidavit that he was escorted to the business where a search was conducted, but that he was not given a copy of a warrant, nor did he see one.[48]

Defendants have alleged that they requested to see copies of the search warrants, which requests were delayed, and that the copies later provided were incomplete because they did not include the attachments. This resembles the situation noted by the Supreme Court in dicta in *Groh* to be an unanswered question. *See* 540 U.S. at 562 n.5. Accordingly, the Court finds it appropriate to hold an evidentiary hearing with respect to when and under what circumstances defendants were provided copies of the search warrants, and to decide this portion of the motion to suppress on the basis of a developed factual record. Although the Court will conduct an evidentiary hearing, the parties should not construe this order as an opinion by this Court that defendants' allegations, if accepted by the Court, would warrant suppression.

### 4.)     Seizure of Property Outside the Scope of the Warrant

Defendants assert that the government seized computers, a car title and a personal checkbook belonging to defendants' daughter, Manula's car, and cash beyond the scope of the search warrant. "As a general rule, only items that are described in a search warrant may be seized in accordance with Fourth Amendment concerns." *United States v. Waldrop*, 404 F.3d 365, 368 (5th Cir. 2005). This motion potentially implicates the plain view doctrine which is an "exception to this general rule" and will be discussed in greater detail below. *See id.*

First, the warrant authorized search and seizure of "any computer, computer hard drive, or

---

[47]R. Doc. No. 101-1, at 4-5; R. Doc. No. 101-6, at 3.
[48]R. Doc. No. 101-7, at 3.

other physical object upon which computer data can be recorded . . . that might contain things otherwise called for by this warrant."[49] Defendants complain that computers and memory devices belonging to their children were seized or copied.[50] The government responds that agents "seized and/or imaged computers that were in common areas," but not "cell phones or computers that reasonably appeared to be used only by the children."[51] The Court concludes that notwithstanding the assertion that the children owned some of the computers or memory devices that were seized, defendants have not made a substantial showing that such computers or memory devices could not have "contain[ed] things otherwise called for by" the warrant. Accordingly, they have not established that any computers or memory devices were seized beyond the scope of the warrant.

Second, defendants submit an affidavit from their daughter asserting that the government seized the title to the daughter's car and checkbooks for the daughter's personal checking account.[52] The Court directed supplemental briefing as to this issue.[53]

With respect to the car title, the government responded that it seized the car title because agents "reasonably believed that title to a brand new 2014 Mini Cooper in the daughter's name might be evidence of money laundering."[54] The government explains that the warrant authorized seizure of "[r]ecords related to the acquisition of assets which may be used to calculate [defendants'] income, including . . . [b]ills, invoices, or receipts for personal property, such as vehicles, furniture,

---

[49]R. Doc. No. 45-4, at 6.
[50]R. Doc. No. 45-2, at 23; R. Doc. No. 45-5, at 2.
[51]R. Doc. No. 60, at 19.
[52]R. Doc. No. 45-5, at 2. The government represents that both the title and the checkbook have been returned. R. Doc. No. 85, at 2.
[53]R. Doc. No. 84.
[54]R. Doc. No. 85, at 1-2.

appliances, televisions, and artwork."[55] The government contends that the agents executing the warrant reasonably believed that a new car, even though titled in the daughter's name, might be evidence of money laundering or evidence of spending in excess of income relevant to the tax allegations.[56] Considering these arguments, the Court concludes that defendants have not established that the car title was outside the scope of the search warrant.

With respect to the daughter's checkbook, the motion is moot because, as discussed at the pretrial conference, the government does not intend to introduce the checkbook as evidence at trial.

Third, defendants assert that Manula's car was seized. The Court directed supplemental briefing as to the basis for this seizure as well.[57] This issue, too, may be moot, in light of the representation at the pretrial conference by counsel for all defendants except Manula that there is no objection to the government's introduction of pictures of the car or eliciting testimony that the car was found in the garage at defendants' house. Accordingly, this issue is deferred until counsel appears for Manula and expresses a position as to the mootness of this issue.

Fourth, defendants assert that cash was seized outside the scope of the warrant.[58] The warrant authorized the seizure of "United States currency . . . in amounts and/or names indicative of being the proceeds of mail fraud, wire fraud, money laundering, or involved in structuring of transactions."[59] The Court will address this issue in connection with defendants' pending motion for release of funds, which more squarely addresses the tracing issues involved with the seizure of funds.

---

[55]R. Doc. No. 45-4, at 6.
[56]R. Doc. No. 85, at 1-2.
[57]R. Doc. No. 84.
[58]R. Doc. No. 45-1, at 23 n.7; R. Doc. No. 86, at 5.
[59]R. Doc. No. 45-4, at 5.

**CONCLUSION**

For the foregoing reasons,

**IT IS ORDERED** that the motion to suppress is **DEFERRED** with respect to the seizure of cash which will be addressed in connection with the motion for release of funds.

**IT IS FURTHER ORDERED** that the motion to suppress is **DEFERRED** with respect to Manula's car, and counsel for Manula shall notify the Court on or before Monday, September 7, 2015, whether this issue is moot as described herein.

**IT IS FURTHER ORDERED** that the motion to suppress is **DEFERRED** with respect to the alleged Rule 41 violations, pending an evidentiary hearing to be held on **Wednesday, September 9, 2015, at 8:30 a.m.**

**IT IS FURTHER ORDERED** that the motion to suppress is **DENIED** in all other respects.

New Orleans, Louisiana, August 31, 2015.

**LANCE M. AFRICK**
**UNITED STATES DISTRICT JUDGE**

20