# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF LOUISIANA

**UNITED STATES OF AMERICA**                                    **CRIMINAL ACTION**

**VERSUS**                                                                    **NO. 15-144**

**SUSANTHA WIJETUNGE, ET AL.**                                **SECTION I**

## ORDER AND REASONS

The Court has pending before it a motion for release of funds and other assets from forfeiture,[1] a motion for partial release of funds,[2] and a deferred portion of defendants' motion to suppress.[3] The government opposes the motions[4] and the Court has received supplemental briefing.[5] For the following reasons, the motions are denied without a hearing.

## BACKGROUND

Defendants, Susantha Wijetunge ("Susantha") and Manula Wijetunge ("Manula") (collectively, "the Wijetunges"), are a married couple who own defendant, VJ Discount, Inc., through which they operated a convenience store and check-cashing business in Kenner, Louisiana ("VJ Discount").[6] The Wijetunges own three other defendant entities which they used for holding rental property: VJ & Manu Properties, LLC; VJ & Manu Properties, II, LLC; and VJ & Manu Properties, III, LLC (collectively, "the Property Defendants").[7]

---

[1]R. Doc. No. 44.
[2]R. Doc. No. 127.
[3]R. Doc. No. 138, at 19-20 (deferring portion of R. Doc. No. 45).
[4]R. Doc. Nos. 61, 134.
[5]R. Doc. Nos. 81 (filed under seal), 87, 88, 97, 98, 143.
[6]R. Doc. No. 67, ¶¶ 11, 13.
[7]R. Doc. No. 67, ¶ 15.

1

On March 6, 2015, a U.S. Department of Homeland Security agent signed a sixty-one-page affidavit in support of an application for warrants to search and seize evidence located at the convenience store and the Wijetunge residence including the garage. The affidavit in support of the application also requested the seizure of assets alleged to be forfeitable.[8] Although the relevant portions of the affidavit will be discussed below in greater detail, the affidavit generally outlined an investigation which allegedly revealed that the Wijetunges committed money laundering by knowingly cashing tax refund checks fraudulently obtained by others and that the Wijetunges evaded currency transaction reporting requirements. The affidavit further alleged that Susantha and Manula filed false tax returns on their own behalf and on behalf of VJ Discount, Inc., and that they failed to file foreign bank reports. Searches of defendants' place of business and home, including the garage, were conducted pursuant to warrants executed on March 10, 2015, and items were seized.[9]

On July 23, 2015, a grand jury returned a thirty two count superseding indictment against the Wijetunges, VJ Discount, Inc., and the Property Defendants.[10] The superseding indictment

---

[8]R. Doc. No. 45-3, at 2, 41.

[9]R. Doc. No. 45-5, at 1.

[10]R. Doc. No. 67. Count one of the superseding indictment charges that between no later than on or about January 1, 2010, and continuing through at least June 4, 2015, Susantha, Manula, and the Property Defendants conspired with others known and unknown (1) to knowingly conduct and attempt to conduct financial transactions which involved the proceeds of mail and wire fraud and which were designed in whole or in part to conceal and disguise the nature, location, source, ownership, and control of the proceeds, in violation of 18 U.S.C. § 1956(a)(1)(B)(i); (2) to knowingly conduct and attempt to conduct financial transactions involving the proceeds of mail and wire fraud and which were designed in whole or in part to avoid a federal transaction reporting requirement, in violation of 18 U.S.C. § 1956(a)(1)(B)(ii); and (3) to knowingly engage, and attempt to engage, in monetary transactions by, through, or to a financial institution in criminally-derived property of a value greater than $10,000, such property having been derived from mail and wire fraud in violation of 18 U.S.C. § 1957.

Counts two through four of the superseding indictment charge Susantha, Manula, and VJ Discount, Inc., with filing currency transaction reports containing material omissions or misstatements of fact concerning the true identity of the individuals involved in the financial

includes a notice of money laundering forfeiture with respect to twenty accounts as well as cash seized pursuant to the seizure warrants, a vehicle, and real properties.[11]

## LAW & ANALYSIS

Defendants move for a hearing and release of all seized and restrained assets.[12] By separate motion, defendants assert additional specific arguments with respect to retirement accounts.[13] Defendants assert that the government has improperly seized or restrained assets they need to defend this prosecution, to operate their business, and for living expenses.[14]

"[A] pretrial asset restraint is constitutionally permissible whenever there is probable cause to believe that the property is forfeitable." *Kaley v. United States*, 134 S. Ct. 1090, 1095 (2014)

---

transaction and the amounts of cash, in violation of 31 U.S.C. § 5324(a)(2), (d); 31 C.F.R. §§ 1010.100, .311, .312, .313; and 18 U.S.C. § 2.

Counts five through nineteen of the superseding indictment charge Susantha, Manula, and VJ Discount, Inc., with failing to file currency transaction reports in violation of 31 U.S.C. § 5324(a)(1), (d); 31 C.F.R. §§ 1010.100, .311, .313; and 18 U.S.C. § 2.

Counts twenty through twenty two of the superseding indictment charge Susantha, Manula, and VJ Discount with knowingly and willfully failing to file "Reports of Foreign Bank and Financial Accounts," in violation of 31 U.S.C. §§ 5314, 5322(a); 31 C.F.R. § 1010.350, 1010.316(c)-(d); and 18 U.S.C. § 2.

Counts twenty three through twenty five of the superseding indictment charge Susantha and Manula with making and subscribing false individual income tax returns, in violation of 26 U.S.C. § 7206(1).

Counts twenty six through twenty eight of the superseding indictment charges Manula with making and subscribing false income tax returns for an S corporation, i.e., VJ Discount, Inc., in violation of 26 U.S.C. § 7206(1).

Counts twenty nine through thirty one of the superseding indictment charge Susantha with willfully aiding and assisting in the preparation of false income tax returns for an S corporation for VJ Discount, Inc., in violation of 26 U.S.C. § 7206(2).

Count thirty two charges Susantha and Manula with conspiring to defraud the United States by concealing their true income and assets in connection with a Free Application for Federal Student Aid ("FAFSA"), in violation of 18 U.S.C. § 371.

[11]R. Doc. No. 67, at 24-30.
[12]R. Doc. No. 44.
[13]R. Doc. No. 127.
[14]R. Doc. No. 44-2, at 10-13

(citing *United States v. Monsanto*, 491 U.S. 600, 615 (1989)). This remains true even if a defendant desires to use restrained assets to fund a criminal defense because "neither due process, nor the Sixth Amendment right to counsel, requires that assets needed to pay an attorney be exempted from restraining orders or, ultimately, from forfeiture." *United States v. Melrose East Subdivision*, 357 F.3d 493, 500 (5th Cir. 2004) (citing *Caplin & Drysdale, Chartered v. United States*, 491 U.S. 617, 623-35 (1989); *Monsanto*, 491 U.S. at 616).

In *Kaley*, the Supreme Court approvingly noted that lower courts "have generally provided a hearing to any indicted defendant seeking to lift an asset restraint to pay for a lawyer," and it allowed a defendant at that hearing to litigate "whether probable cause exists to believe that assets in dispute are traceable or otherwise sufficiently related to the crime charged in the indictment." 134 S. Ct. at 1095; *see also United States v. Holy Land Foundation for Relief and Development*, 493 F.3d 469, 475 (5th Cir. 2007) (observing that a hearing may be justified when a movant "needs the restrained assets to pay for legal defense on associated criminal charges, or to cover ordinary and reasonable living expenses"). This issue can be litigated at a hearing because a grand jury's determination of probable cause to believe that specific assets are forfeitable "is a technical matter far removed from the grand jury's core competence and traditional function" and such matter may be litigated without calling into question the determination of probable cause that defendants committed the underlying crime. *See Kaley*, 134 S. Ct. at 1099 n.9.[15]

The parties agree that the availability of a hearing with respect to a requested release of assets alleged to be forfeitable which are seized or restrained before trial is governed by the Fifth

---

[15]A grand jury's finding of probable cause that defendants have committed crimes cannot be challenged through a pretrial hearing. *See id.* at 1105.

Circuit's opinion in *United States v. Holy Land Foundation for Relief and Development*.[16] In *Holy Land Foundation*, the Fifth Circuit held that "when the Government is seeking forfeiture and secures an indictment to that effect based on probable cause, a court may issue a restraining order without prior notice or a hearing." 493 F.3d at 475. "In some cases, however, due process will require that the district court then promptly hold a hearing at which the property owner can contest the restraining order, without waiting until trial to do so." *Id.* "To determine when such a hearing is required, [the Court] consider[s] the three *Eldridge* factors: the private interest that will be affected by the restraint; the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and finally, the Government's interest, including the burdens that the hearing would entail." *Id.* (citing *Mathews v. Eldridge*, 424 U.S. 319, 335 (1976)). The *Eldridge* test requires the Court to balance these interests and factors. *See id.* at 475, 477 n.10.

Some courts require additional specific showings that must be made to warrant a hearing relative to a request for release of restrained assets. In *United States v. Jones*, which the Fifth Circuit favorably cited in *Holy Land Foundation*, the Tenth Circuit also looked to the *Eldridge* factors to "determine whether due process requires some form of a post-restraint, pre-trial hearing." 160 F.3d 641, 645 (10th Cir. 1998). However, the Tenth Circuit held that to trigger a hearing, "a defendant must demonstrate to the court's satisfaction that she has no assets, other than those restrained, with which to retain private counsel and provide for herself and her family." *Id.* at 647. The defendant

---

[16]*Holy Land Foundation* is factually and procedurally distinct from the present matter, but the government and defendants each cite its three-factor test as the applicable test for determining whether defendants are entitled to a hearing. R. Doc. No. 44-2, at 8; R. Doc. No. 61, at 7.

must also "make a prima facie showing of a bona fide reason to believe the grand jury erred in determining that the restrained assets" are forfeitable. *Id.* These requirements "protect the government and its resources from frivolous challenges." *Id.*; *accord United States v. Farmer*, 274 F.3d 800, 804-05 (4th Cir. 2001) (applying *Eldridge* balancing test but requiring the same "threshold showings" as *Jones* to prevent "open[ing] the floodgates to hearings on flimsy or insubstantial grounds"). The Second Circuit, on the other hand, requires only an "evidentiary showing that there are no sufficient alternative, unrestrained assets to fund counsel of choice," and not a "formal *prima facie* showing that the funds were illegitimately restrained," as was required in *Jones* and *Farmer*. *United States v. Bonventre*, 720 F.3d 126, 131 (2d Cir. 2013).

In *Holy Land Foundation*, the Fifth Circuit favorably cited *Jones* and *Farmer*, but it did not expressly adopt those specific threshold showings for triggering a hearing, although some language in the Fifth Circuit's opinion is consistent with those approaches. *See* 493 F.3d at 476 n.10 ("While the first of the *Eldridge* factors largely disposes of the issue in this case, we note for the sake of completeness that the other two factors also favor the Government."). Furthermore, *Holy Land Foundation* involved a third party claimant to seized funds, not a defendant. Accordingly, the Fifth Circuit did not have reason to address the showing required from a criminal defendant seeking release of restrained funds to pay for a defense. *See id.* at 477.

District courts within the Fifth Circuit have noted that the Fifth Circuit has not expressly adopted the additional *Jones*/*Farmer* requirements, but those courts have nonetheless considered those requirements to varying degrees under the broader umbrella of the *Eldridge* factors. *See United States v. JB Tax Prof'l Servs., Inc.*, No. 13-127, 2013 WL 6004047, at * 2 (E.D. La. Nov. 13, 2013) (Berrigan, J.) ("This Court will not apply the "*Jones-Farmer*" test to this case but will nevertheless

6

refer to it as persuasive authority on how to interpret and apply the *Mathews v. Eldridge* test to the present circumstances."); *United States v. Simpson*, 2011 WL 195676, at *3 n.6 (N.D. Tex. Jan. 20, 2011) (Fitzwater, J.) ("The court will consider these [*Jones/Farmer*] factors in light of the ones set out in *Holy Land Foundation*, but not as independent factors."). Another district court has concluded that a defendant failed to make the requisite showing for a hearing pursuant to either *Jones* or *Bonventre*. *See United States v. Fisch*, No. 11-722, 2013 WL 5774876, at *6 (S.D. Tex. Oct. 24, 2013) (Rosenthal, J.).

The Court will address the *Eldridge* factors in order, taking into consideration the persuasive authority suggesting that a defendant should also show "whether the defendant has no other funds to pay his attorney and whether there is reason to believe that the restrained assets are untainted property for which no probable cause exists for forfeiture." *Simpson*, 2011 WL 195676, at *3.

## A.     Private Interest

With respect to the "private interest that will be affected by the restraint," the Fifth Circuit has favorably cited decisions from other circuits which "have found that a property owner's interest is particularly great when he or she needs the restrained assets to pay for legal defense on associated criminal charges, or to cover ordinary and reasonable living expenses. 493 F.3d at 475 (citing *United States v. Melrose East Subdivision*, 357 F.3d 493, 499-500 (5th Cir. 2004)).

By affidavit, Manula asserts that "[t]he only money that the Government did not seize from our personal and business accounts was one retirement account that contained $30,000."[17] She also affirms that "[m]y husband and I do not have any remaining money that the Government did not

---

[17]R. Doc. No. 44-12, at 2.

seize."[18] She states that the family's only income is "approximately $16,000 a month" in gross rental property proceeds.[19] Susantha asserts by affidavit that as a result of the seizures, he has been unable to obtain loans, reopen VJ Discount, or successfully operate another business, VJ Convenience.[20] The Court notes that since the filing of these motions, counsel has been appointed to represent Manula[21] after a hearing before the U.S. Magistrate Judge.[22] The Court also notes that counsel for Susantha, VJ Discount, and the Property Defendants has asserted that his work is presently uncompensated.[23]

The government responds that the Court should scrutinize defendants' assertions because they still have substantial rental income and defendants have not offered a "concrete accounting of their current assets and necessary expenses."[24] However, the government concedes that "defendants' interest into counsel of their choice is vital and this Court should weigh defendants' interests accordingly" as defendants' interest is "strong" in this case.[25]

If the Court were to follow other district courts within this Circuit that have imposed a more specific requirement of a showing of need to use the funds, defendants have likely failed to make such a showing. For example, in *Fisch*, the district court denied a hearing because the defendant did not "'make a sufficient evidentiary showing that there are no sufficient alternative, unrestrained assets to fund counsel of choice,'" despite having "a number of opportunities . . . and an extended

---

[18]R. Doc. No. 44-12, at 2.
[19]R. Doc. No. 44-12, at 2.
[20]R. Doc. No. 44-11, at 1-3.
[21]R. Doc. No. 135.
[22]R. Doc. No. 130.
[23]R. Doc. No. 160, at 2 n.1.
[24]R. Doc. No. 61, at 8.
[25]R. Doc. No. 61, at 8.

period in which to do so." 2013 WL 5774876, at * 6 (quoting *Bonventre*, 720 F.3d at 132).

Here, the government has seized or restrained assets of substantial value, but defendants have not provided any estimate of how much they need to fund a defense in this matter or "disclosed [their] net worth." *See id.* Nonetheless, the government does not expressly argue that the motions can be denied without a hearing *solely* on the basis of defendants' insufficient showing of a need for restrained funds to retain counsel or for any other purpose. As will be explained below, the Court concludes that the motions should be denied without a hearing regardless of defendants' need because there is probable cause to believe that the seized and restrained assets are forfeitable. Accordingly, the Court will assume for purposes of argument that, if given another opportunity, defendants could satisfy any requisite showing of need for the restrained or seized assets and that their private interests weigh in favor of a hearing.[26]

## B.     Government Interest

In *Holy Land Foundation*, the Fifth Circuit noted that the government has a strong interest in obtaining forfeiture based on "the Supreme Court's view that 'Congress could not have chosen stronger words' to express its view that forfeiture should be both mandatory and broad in scope.'" 493 F.3d at 476 n.10 (quoting *Monsanto*, 491 U.S. at 606-07). The Fifth Circuit drew the "related conclusion" that it is a "burden on the Government to have to defend" forfeiture "during the course of an ongoing criminal prosecution." *Id.*[27]

---

[26]The Court will also assume that defendants' asserted need to use the restrained or seized assets to operate a business is a cognizable interest comparable to a need for reasonable living expenses, although defendants do not cite any case in support of that proposition.

[27]Although the attack on the forfeiture order in *Holy Land Foundation* was brought by a third party not subject to the prosecution, *see id.*, defending the pretrial seizure from a challenge by defendants also burdens the government during its prosecution of this case.

The government contends that it "has a strong interest in restricting access to a pretrial airing of [its] trial evidence."[28] Defendants acknowledge that interest, as well as the government's general interest "in preserving assets subject to forfeiture."[29] Defendants simply assert that the government does not have an interest in avoiding a hearing with respect to assets to which it "likely has no right," and that the government's interest is outweighed by defendant's interest in obtaining necessary funds.[30]

The Court finds that the government has a significant interest in securing the availability of forfeitable assets and in avoiding an unnecessary hearing regarding the basis for seizure of those assets which hearing would at least partially overlap with issues it must prove at trial. Such interest weighs against conducting an evidentiary hearing.

## C.    Risk of Erroneous Deprivation

The third factor is the risk of erroneous deprivation through the procedures used and the "probable value, if any, of additional or substitute procedural safeguards." *Holy Land Foundation*, 493 F.3d at 475. For the purposes of the showing necessary to obtain a hearing, this *Eldridge* factor has been variously framed as whether defendants have made a "prima facie showing of a bona fide reason to believe the grand jury erred in determining that the seized assets" are forfeitable pursuant to the applicable forfeiture statute, *see Jones*, 160 F.3d at 647; whether defendants have articulated a basis for their motion that is "not frivolous," *see Bonventre*, 720 F.3d at 131; or the "probable value, if any, of a judicial hearing in uncovering mistaken grand jury findings of probable cause,"

---

[28]R. Doc. No. 61, at 8.
[29]R. Doc. No. 44-2, at 18.
[30]R. Doc. No. 44-2, at 18.

*see Kaley*, 134 S. Ct. at 1103.[31]

The government frames the issue as whether defendants have made "a good faith showing that the probable cause determination was in error."[32] Defendants assert their entitlement to a hearing because "the Government's evidence that it is justified in seizing all of the funds in Defendants' accounts is exceptionally weak, rendering it unlikely that the Government can ever establish that the vast majority of the funds and other assets seized constitute or are derived from proceeds traceable to money laundering or structuring."[33] The Court notes that, "[p]robable cause . . . is not a high bar: It requires only the kind of 'fair probability' on which 'reasonable and prudent people, not legal technicians, act.'" *Kaley*, 134 S. Ct. at 1103 (internal quotation marks and alterations omitted) (citing *Florida v. Harris*, 133 S. Ct. 1050, 1055 (2013)).

**1)      Which Finding of Probable Cause is at Issue**

As a threshold matter, the Court must parse which probable cause findings defendants must challenge to show that this *Eldridge* factor weighs in favor of a hearing. The applicable money laundering forfeiture statute is subject to the procedural mechanisms of 21 U.S.C. § 853 for pretrial seizure of forfeitable assets. *See* 18 U.S.C. § 982(b)(1). Section § 853 provides as follows:

(e)      Protective orders
        (1)      Upon application of the United States, the court may enter a
                restraining order or injunction, require the execution of a satisfactory

---

[31]In *Kaley*, the Supreme Court discussed the *Eldridge* factors in the context of a hypothetical hearing to challenge a grand jury's finding of probable cause with respect to commission of a crime. *See id.* at 1101. Although the Supreme Court held that such a hearing is unavailable to challenge a grand jury's finding of probable cause *that a crime was* committed, *see id.* at 1100, the analysis is instructive with respect to how the Supreme Court would analyze a request for a hearing to challenge a grand jury's finding of probable cause as to the forfeitability of assets.
        [32]R. Doc. No. 134, at 2.
        [33]R. Doc. No. 44-2, at 9.

performance bond, or take any other action to preserve the availability of [forfeitable property]–

(A)    upon the filing of an indictment or information charging a violation . . . for which criminal forfeiture may be ordered under this section and alleging that the property with respect to which the order is sought would, in the event of conviction, be subject to forfeiture under this section; or

(B)    prior to the filing of an indictment or information, if, after notice to persons appearing to have an interest in the property and opportunity for a hearing, the court determines that–

(i)    there is a substantial probability that the United States will prevail on the issue of forfeiture and that failure to enter the order will result in the property being destroyed, removed from the jurisdiction of the court, or otherwise made unavailable for forfeiture; and

(ii)    the need to preserve the availability of the property through the entry of the requested order outweighs the hardship on any party against whom the order is to be entered . . . .

(f)    Warrant of seizure

The Government may request the issuance of a warrant authorizing the seizure of property subject to forfeiture under this section in the same manner as provided for a search warrant. If the court determines that there is probable cause to believe that the property to be seized would, in the event of conviction, be subject to forfeiture and that an order under subsection (e) of this section may not be sufficient to assure the availability of the property for forfeiture, the court shall issue a warrant authorizing the seizure of such property.

In this case, the government requested and obtained seizure warrants pursuant to 21 U.S.C. § 853(f) instead of a protective order pursuant to § 853(e). Accordingly, the U.S. Magistrate Judge necessarily found probable cause to believe that (1) the seized property would be forfeitable in the event of conviction, and (2) "an order under subsection (e) of this section may not be sufficient to assure the availability of the property for forfeiture."[34] *Id*. at § 853(f) Subsequently, the grand jury

---

[34]The Fourth Circuit has interpreted the probable cause standard in § 853(f) to apply to both the showing of forfeitability and the showing of insufficiency of an order pursuant to § 853(e). *See United States v. Martin*, 662 F.3d 301, 304 n.6 (4th Cir. 2011).

returned an indictment[35] and superseding indictment[36] containing notices of forfeiture as to the twenty seized accounts, as well as real property, certain amounts of cash seized from the home and safety deposit boxes, and Manula's Audi.[37]

Defendants attack the initial pre-indictment showing of probable cause in support of the seizure warrants. In addition to disputing the showing with respect to forfeitability of the assets, which will be discussed in greater depth below, defendants assert that the government should have proceeded pursuant to § 853(e) instead of § 853(f) because "there is no reason that the agent [who signed the affidavit] could not have followed the [§ 853(e)] protective order procedure in order to protect Defendants' due process rights pre-indictment."[38] Furthermore, defendants argue that the affidavit in support of the seizure warrants did not establish the § 853(f) requirement of probable cause to believe "that an order under subsection (e) . . . may not be sufficient to assure the availability of the property for forfeiture" necessary for issuance of a seizure warrant.[39] In response, the government contends that the subsequent grand jury finding of probable cause that the seized assets are forfeitable mooted any challenge to the prior showing of probable cause in support of the seizure warrants.[40]

First, defendants' argument that the government should have proceeded pursuant to § 853(e) instead of § 853(f) is easily dismissed. Both subsections are plainly permissive, and the government, provided that it satisfied the respective prerequisites for pretrial restraint of assets, was entitled to

---

[35]R. Doc. No. 1.
[36]R. Doc. No. 67.
[37]R. Doc. No. 67, at 24-30.
[38]R. Doc. No. 44-2, at 7
[39]R. Doc. No. 44-2, at 7.
[40]R. Doc. No. 61, at 4.

proceed pursuant to either subsection.

Second, the Court is not persuaded by the government's position that the finding of probable cause by the grand jury necessarily moots all issues related to the probable cause showing in support of a prior seizure of assets pursuant to § 853(f). As explained above, § 853(f) requires a showing of probable cause to believe both that the property is forfeitable *and* that an order pursuant to § 853(*e*) may be insufficient to preserve the forfeitable property. The government fails to explain how the grand jury's finding that certain assets are forfeitable is a substitute for the additional showing of the insufficiency of a § 853(e) order. Put another way, if the government did not originally establish probable cause that a § 853(e) order "may be sufficient to assure the availability of the property for forfeiture," as required by § 853(f), it is hardly clear how the subsequent indictment could cure that deficiency.

Nonetheless, the Court concludes on the facts of this case that the government made an adequate showing to the U.S. Magistrate Judge of probable cause for issuance of the seizure warrants pursuant to § 853(f). The affidavit in support of the application for the seizure warrants asserted that, in the agent's experience, "because of the liquid nature of a bank and/or investment account, the funds on deposit could be easily liquidated."[41] That allegation, combined with the allegations that defendants did not comply with foreign banking reporting requirements[42] and that they "withdrew hundreds of thousands of dollars per week in cash from certain bank accounts,"[43] establishes "probable cause to believe . . .  that an order under [§ 853(e)] *may* not be sufficient to assure the availability of the property for forfeiture." 21 U.S.C. § 853(f). Accordingly, defendants

---

[41]R. Doc. No. 45-3, at 50.

[42]R. Doc. No. 45-3, at 40.

[43]R. Doc. No. 45-3, at 42.

have not demonstrated that this factor weighs in favor of a hearing with respect to the existence of probable cause supporting the issuance of seizure warrants pursuant to § 853(f).

With respect to the issue of probable cause to believe that the seized assets are forfeitable, both the U.S. Magistrate Judge and the grand jury made such findings. As to this issue, the Court agrees with the government that the grand jury's finding of probable cause that assets are forfeitable is the operative probable cause finding which defendants must dispute in order to obtain a hearing. Cf. Kaley, 134 S. Ct. at 1103 ("The Mathews [v. Eldridge] test's remaining prong . . . thus boils down to the 'probable value, if any,' of a judicial hearing in uncovering mistaken grand jury findings of probable cause.") (citation omitted). However, in determining whether defendants have made such a showing, the Court nonetheless finds it appropriate to examine the sufficiency of the affidavit in support of the pre-indictment seizure warrants. Defendants and the government both focus on the facial sufficiency of that affidavit as evidence with respect to the correctness of the grand jury's finding of probable cause that the disputed assets are forfeitable.[44]

### 2)    Law Applicable to Money Laundering Forfeiture

Susantha, Manula, and the Property Defendants are charged with conspiracy to commit money laundering in violation of 18 U.S.C. § 1956(h).[45] Following a conviction of that count, the Court "shall order that the person forfeit to the United States any property, real or personal, involved in such offense, or any property traceable to such property." 18 U.S.C. § 982(a)(1) (emphasis

---

[44]R. Doc. No. 44-2, at 15-18; R. Doc. No. 61, at 9-10.

[45]R. Doc. No. 67, at 1-14. Counts two through nineteen of the superseding indictment, the transaction structuring counts, also require forfeiture of property and are included in a separate notice of forfeiture in the superseding indictment. R. Doc. No. 67, at 32 (citing 31 U.S.C. § 5317(c)(1)). However, the government limits its discussion of this basis for forfeiture to a footnote and it does not articulate those counts as justifying seizure of the twenty accounts and other assets at issue. R. Doc. No. 61, at 5 n.5.

added).

In *United States v. Tencer*, the Fifth Circuit interpreted property "involved in" a money laundering offense expansively, but not without limitation. *See* 107 F.3d 1120, 1134-35 (5th Cir. 1997).[46] The defendant in *Tencer* was convicted of several counts of laundering the proceeds of a mail fraud in violation of 18 U.S.C. § 1956. *See* 107 F.3d at 1128-30. The Fifth Circuit affirmed the money laundering convictions because the defendant transferred funds to a geographically distant bank account in a manner which allowed the jury to "infer that [defendant] was attempting to conceal the nature of the funds and facilitate laundering of the proceeds of his fraudulent activities." *Id.* at 1130.

In *Tencer*, the jury returned a forfeiture verdict for the entire balance of the bank account which included both the laundered fraud proceeds as well as untainted funds which were not the proceeds of fraud. *See id.* at 1133. The district court reduced the amount of the forfeiture award and the government and defendant cross-appealed. *Id.* The government argued that the entire account should have been forfeited, while the defendant argued that the forfeiture order should have been "reversed in its entirety because it include[d] proceeds from legitimate insurance claims." *Id.* at 1133-34.

The issue decided by the Fifth Circuit was the meaning of property "involved in" money laundering for the purposes of forfeiture pursuant to 18 U.S.C. § 982(a)(1). The Fifth Circuit addressed the viability of a "facilitation theory" of forfeiture, pursuant to which "all of the funds in the . . . account were forfeitable because any legitimate funds involved and 'facilitated' the offense

---

[46]The Court focuses its analysis on the "involved in" prong of 18 U.S.C. § 982(a)(1) because, as set forth below, that provision drives the probable cause analysis with respect to the forfeiture of the total balances of the seized accounts.

by providing a cover for the tainted funds." *Id.* at 1134. Analyzing case law, the Fifth Circuit concluded that "merely pooling tainted and untainted funds in an account does not, without more, render that account subject to forfeiture." *Id.* at 1134. However, the Fifth Circuit approved of the "facilitation theory" in general, agreeing with another court which "held that forfeiture of legitimate and illegitimate funds commingled in accounts was proper as long as the government demonstrated that the defendant had pooled the funds to disguise the nature and source of his scheme." *Id.* at 1135. Based on the facts in *Tencer*, the Fifth Circuit concluded that the entire balance of the account was "involved in" the money laundering and subject to forfeiture because "[a]ll of the funds–both legitimate and illegitimate–were quickly moved into the account within a few days in order to conceal the nature and source of the mail fraud proceeds." *Id.* at 1135.

     **3)**     **Analysis**

The Court has reviewed the parties' arguments, the applicable law, and the available record, bearing in mind that probable cause is "not a high bar." *Kaley*, 134 S. Ct. at 1103. The Court concludes that defendants have not made a threshold showing that the grand jury made an erroneous finding when it determined that there was probable cause to believe that the seized funds are forfeitable; to the contrary, for the reasons discussed below, the available record evidence establishes that there exists sufficient evidence which would have allowed the grand jury to find probable cause that (1) the alleged conspiracy involved substantial amounts of forfeitable money in general; (2) such tainted money is traceable into the twenty specific seized accounts, which accounts were also "involved in" the alleged conspiracy and therefore entirely forfeitable; and (3) the other assets seized are traceable to the forfeitable accounts.

First, the affidavit in support of the seizure warrants establishes probable cause that

17

defendants deposited at least approximately $3,000,000.00 in fraudulently obtained tax refund checks.[47] The affidavit also establishes probable cause that in the course of operating their check-cashing business, defendants used funds from six bank accounts to purchase both legitimate and fraudulently obtained tax refund checks, deposited those checks back into the six accounts, and then used the commingled deposited funds to purchase more checks "in what was effectively a 'revolving door' of cash and illicit proceeds."[48] The affidavit also establishes that the magnitude of the amounts involved has made "extraction of tax refund checks difficult," which supports the factual assertion that commingling fraudulently obtained tax refund checks with legitimate checks "enabled [defendants] to conceal and disguise these fraud proceeds."[49] This suffices to establish probable cause that the untainted funds in those six accounts were "involved in" the money laundering conspiracy, as that term was interpreted in *Tencer*, and therefore forfeitable. *See* 107 F.3d at 1134-35. The affidavit also establishes probable cause that transfers of money from those six accounts into a second group of five accounts "aided . . . in disguising the nature, source, ownership, and control of the fraud proceeds" based on the number of accounts, "the multiple layers of transfers among these accounts," and the "lack of apparent business purpose" for both.[50]

Second, the Court concludes that the affidavit establishes probable cause that forfeitable money from the accounts discussed above is, through direct transfers or through the deposit of checks purchased with tainted funds, traceable into the twenty accounts actually seized by the

---

[47]R. Doc. No. 45-3, at 44. The government asserts that this figure has increased as the investigation has continued. R. Doc. No. 61, at 6.

[48]*See* R. Doc. No. 45-3, at 44-47.

[49]R. Doc. No. 45-3, at 44, 45.

[50]R. Doc. No. 45-3, at 47-48.

government.[51] The government asserts that these subsequent transfers "served to further conceal and disguise the illegal nature of the initial fraudulent tax refund check deposits," thereby commingling the tainted funds with legitimate funds in the seized accounts and rendering the entire balances of the accounts forfeitable as "involved in" the money laundering conspiracy.[52]

Third, although the affidavit is admittedly terse as to the nature and extent of these subsequent transfers into the seized accounts, the question at this stage of the proceedings is only whether there is any doubt as to the grand jury's finding of probable cause that the funds in those accounts are forfeitable. Considering the evidence of a massive volume of check cashing[53] and the subsequent difficulty identifying the fraudulently obtained tax checks, the Court finds that the available record establishes probable cause that defendants did more than "merely pool[] tainted and untainted funds" in the twenty seized accounts and, therefore, there is probable cause supporting a finding that the total balances of all twenty accounts are subject to forfeiture. *See Tencer*, 107 F.3d at 1134-35.

The Court likewise concludes that defendants' critique of the government's methodology for identifying $3,000,000.00 in fraudulently obtained tax refund checks which ultimately flowed into the seized accounts, although not frivolous, does not negate the showing of probable cause.[54] Such arguments are more appropriately reserved for trial. The Court is not persuaded by the cases relied on by defendants in support of their request for an evidentiary hearing or release of assets, which

---

[51]*See* R. Doc. No. 45-3, at 47-50.
[52]R. Doc. No. 45-3, at 48-49.
[53]R. Doc. No. 87-1, at 2-3.
[54]R. Doc. No. 44-2, at 5-8 (filed under seal).

19

cases are factually and legally inapposite.[55]

Defendants also raise a number of more specific arguments pertaining to the existence of probable cause to seize or restrain assets other than the seized accounts. With respect to five particular accounts seized, defendants assert they are entitled to a hearing and release of the seized funds because they can present evidence that the accounts were "unblemished by deposits during the alleged conspiracy period."[56] However, defendants' arguments are predicated on a misunderstanding that the charged conspiracy ended in June 2013.[57] In fact, the superseding indictment alleges that the money laundering conspiracy continued "through at least June 4, 2015."[58]

As to Manula's car, the record contains evidence that the car was purchased with a check drawn on one of the accounts listed in the superseding indictment which, for the reasons explained above, is entirely forfeitable.[59] Accordingly, defendants have not demonstrated any likelihood that the grand jury erred in finding probable cause that the car is forfeitable as property entirely traceable to property involved in the alleged money laundering conspiracy. 18 U.S.C. § 982(a)(1).[60] As to

---

[55]The opinion in *United States v. Contents in Account No. 059-644190-69*, 253 F. Supp. 2d 789 (D. Vt. 2003) is fact-specific, not binding on this Court, and did not involve an alleged money laundering conspiracy of the nature and magnitude alleged in this case. *United States v. Hassan*, 439 F. Supp. 2d 903 (E.D. Ark. 2006), did not involve charges of money laundering comparable to the allegations in this case. Although the Court ordered an evidentiary hearing in *United States v. Patel*, the government does not here assert the substitute-asset theory which was central in that case. *See* 888 F. Supp. 2d 670, 763-70 (W.D. Va. Aug. 22, 2012); R. Doc. No. 97, at 5.

[56]R. Doc. No. 127-1, at 2.

[57]R. Doc. No. 127-3, at 127-1, at 2.

[58]R. Doc. No. 67, at 5.

[59]R. Doc. No. 85, at 3; R. Doc. No. 85-1, at 19; R. Doc. No. 67, at 25.

[60]Accordingly, defendants' citation to *United States v. One 1980 Rolls Royce, VIN # SRL 39955* is inapposite. *See* 905 F.2d 89, 90 (5th Cir. 1990) (reversing summary judgment in civil forfeiture case against three properties purchased in part, but not entirely with forfeitable proceeds of drug transactions).

$204,822.50 seized from the business, a total of $496,013.00 seized from the home,[61] and $300,000.00 seized from a safety deposit box, the grand jury's finding of probable cause of forfeitability is supported by the record evidence regarding defendants' substantial withdrawals of cash from forfeitable accounts.[62]

Finally, the indictment and superseding indictment include notices of forfeiture as to certain pieces of real property.[63] The government has not seized those properties, but it has filed notices of *lis pendens* as to those properties.[64] The grand jury found that defendants "would and did cause real and personal property to be purchased[] using funds and bank accounts that had facilitated money laundering."[65] Defendants' arguments for release of the restraint are limited to the assertion that "the Government cannot show probable cause . . . to restrain the real property for which the Government has now filed notices of *lis pendens*, because the Government cannot describe how that property is in any way traceable to the crimes alleged."[66] Because the Court has concluded that defendants have not shown that the grand jury may have erred when it found probable cause to believe that the seized accounts are entirely forfeitable, the Court likewise concludes that defendants have not shown that the grand jury may have erred when it concluded that there was probable cause to find that properties purchased with funds from those accounts are forfeitable. Accordingly, defendants have not convinced the Court that a hearing as to those real properties is warranted..

Having considered this *Eldridge* factor, the Court does not find that defendants have

---

[61]This is the total of three separate amounts listed in the superseding indictment.
[62]R. Doc. No. 45-3, at 42-43.
[63]R. Doc. No. 1, at 22-26; R. Doc. No. 67, at 24-29.
[64]R. Doc. Nos. 7-14.
[65]R. Doc. No. 67, at 9.
[66]R. Doc. No. 44-2, at 8.

articulated any meaningful "risk of an erroneous deprivation" of their interest in their funds through the pre-indictment and grand jury procedures used, or any "probable value . . . of additional or substitute procedural safeguards" such as an evidentiary hearing. *Holy Land Foundation*, 493 F.3d at 475. The government has satisfied the Court as to the existence of probable cause with respect to all assets seized or restrained, and defendants' arguments to the contrary are more appropriately raised at a trial on the merits.

**D.    Conclusion**

Considering the foregoing discussion of the relevant *Eldridge* factors, the Court concludes that defendants have not established that the balance of factors entitles them to a hearing with respect to the existence of probable cause underlying the seizure or restraint of the assets discussed herein. *A fortiori*, defendants have not established their entitlement to the return of such assets. The ultimate issue of the forfeitability of any assets will be determined in accordance with Rule 32.2 of the Federal Rules of Criminal Procedure.

In addition, the Court previously deferred[67] a portion of defendants' motion to suppress[68] with respect to the seizure of the Audi and cash. The foregoing analysis is dispositive of the probable cause issues asserted in the motion to suppress, and the remainder of that motion is denied as well.

Accordingly,

**IT IS ORDERED** that the motion for release of funds and the motion for partial release of funds are **DENIED**.

**IT IS FURTHER ORDERED** that the deferred portion of the motion to suppress related

---

[67]R. Doc. No. 138, at 19-20.
[68]R. Doc. No. 45.

to the seized funds is **DENIED**.

New Orleans, Louisiana, October 28, 2015.

**LANCE M. AFRICK**
**UNITED STATES DISTRICT JUDGE**