UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| UNITED STATES OF AMERICA | CRIMINAL ACTION |
| VERSUS | No. 15-144 |
| MANULA WIJETUNGE, ET AL. | SECTION I |

### ORDER AND REASONS

Before the Court are several motions *in limine* filed by defendants. Defendants, VJ Discount, Inc., VJ & Manu Properties, LLC, VJ & Manu Properties, II, LLC, and VJ & Manu Properties, III, LLC (collectively, "the corporate defendants"), have filed: (1) a motion[1] *in limine* to prevent the government and its witnesses from referencing the $5,245,615 in cash seized from defendants on March 10, 2015; (2) a motion[2] *in limine* to prevent the government and its witnesses from referencing the guns found during the government's search of defendants' residence at 81 Chateau Du Lac; (3) a motion[3] *in limine* to preclude government witness, Special Agent Matthew Reidell, from giving opinion testimony as to criminal intent and defendants' state of mind; and (4) a motion[4] *in limine* to prevent the government from referencing the conspiracy to commit money laundering and from introducing any statements by alleged co-conspirators. As part of this final motion, the corporate defendants request that the Court hold a hearing pursuant to *United States v. James*, 590 F.2d 575 (5th Cir. 1979).[5]

---

[1] R. Doc. No. 203.
[2] R. Doc. No. 204.
[3] R. Doc. No. 205.
[4] R. Doc. No. 214.
[5] R. Doc. No. 214, at 1.

The remaining defendants, Susantha Wijetunge and Manula Wijetunge (collectively, "the Wijetunges"), have also filed a motion[6] *in limine* to prevent the government and its witnesses from referencing the $5,245,615 in cash seized from defendants on March 10, 2015 as well as the eight immovable properties owned by defendants. As this motion is substantively identical to the motion filed by the corporate defendants[7] and given that the government addressed both motions in a single brief, the Court will simultaneously analyze the arguments contained in both motions.

The government has filed briefs[8] in opposition addressing all of defendants' motions. For the following reasons, the Court agrees with the government that each of defendants' motions should be denied. The Court assumes familiarity with the factual and procedural background of the case.

## LAW AND ANALYSIS

**I. Motions to prevent reference to the $5,245,615 in cash and the eight immovable properties filed by the corporate defendants and the Wijetunges**

Defendants argue that any reference to the $5,245,615 in cash and the eight immovable properties seized by the government should be barred as irrelevant. Defendants further argue that the introduction of such evidence should be excluded as unduly prejudicial, confusing, misleading, and as creating an undue delay or waste of time pursuant to Rule 403 of the Federal Rules of Evidence.

Defendants assert that the vast majority of the money and the ownership of the properties is not relevant because "[t]he dispute at the heart of this case is whether the [defendants'] check cashing business was properly or illegally cashing checks" and, even if the business was illegally

---

[6] R. Doc. No. 208.
[7] As previously noted, the corporate defendants only ask that the $5,245,615 in cash be excluded—their motion does not address the immovable properties.
[8] R. Doc. Nos. 216, 218, 219, 220.

cashing checks, "it appears clear that the fees/monies received by the defendants as part of the alleged criminal scheme will amount to no more than $500,000--$550,000."[9] Defendants therefore maintain that reference to any amount of money beyond $550,000 is not relevant to the government's case and that such evidence should not be admitted.

Furthermore, defendants argue that reference to such large sums would unduly prejudice defendants in violation of Rule 403. They claim that the "specter" posed by defendants' sizeable assets "will cause the jury to immediately conclude that large amounts of money is *ipso facto* evidence that some crimes must have been committed."[10] As the cash and immovable properties supposedly have no probative value with respect to the government's allegations of check cashing fraud, defendants conclude that the probative value of this evidence is substantially outweighed by the risk of unfair prejudice, confusing the issues, misleading the jury, causing undue delay, and wasting time.

In response, the government emphasizes that defendants' argument proceeds as though the superseding indictment consisted solely of the money laundering conspiracy.[11] According to the government, "the defendants ignore the criminal tax and conspiracy to defraud the United States charges against them," and "proof that the defendants owned millions of dollars in cash and real estate is highly probative of the allegations that they underreported their income on their tax returns and financial aid applications."[12] In addition to its relevance to the tax crimes charged in counts 23-31 of the superseding indictment and the conspiracy to defraud the U.S. Department of

---

[9] R. Doc. No. 208-1, at 2.
[10] R. Doc. No. 203-1, at 1.
[11] R. Doc. No. 216, at 1.
[12] R. Doc. No. 216, at 1-2.

Education charged in count 32 of the superseding indictment, the government further argues that the cash and properties are in fact relevant to the money laundering conspiracy.[13]

The government's position is that all of the financial crimes alleged in the 32-count superseding indictment are interrelated. It argues that in order to prove the allegations of check cashing fraud, "the government will need to show how the proceeds from the fraudulently obtained tax refund checks were deposited, layered, transferred and thoroughly commingled with defendants' numerous accounts."[14] This process, the government posits, will necessarily include showing how the large volumes of money passing through the defendants' accounts helped to conceal and disguise the fraud proceeds.[15] In the government's eyes, the money and the immovable properties are relevant not only to the charges that defendants fail to mention in their motion, but also to the charges that defendants do mention.

The government is correct that the cash and immovable properties are directly relevant to the criminal tax charges and the charge of conspiracy to defraud the United States. In order to prove the tax charges, the government must establish that defendants willfully made false material statements on their income tax returns. *See* 26 U.S.C. § 7206(1); Fifth Circuit Pattern Jury Instructions (Criminal) § 2.102A (2015). The government's allegations are that defendants underreported not just the income they allegedly received from fraudulent check cashing, but also income from their regular check cashing business. Evidence that defendants spent money on real estate at a pace far beyond what their reported income would support is clearly relevant to proving that offense, as is evidence that defendants accumulated millions of dollars more than they reported

---

[13] R. Doc. No. 216, at 4.
[14] R. Doc. No. 216, at 5.
[15] R. Doc. No. 216, at 5.

as income to the IRS. Simply put, defendants' ownership of allegedly unaccounted for assets is relevant to proving that they underreported their total income.[16]

Furthermore, the Court agrees with the government that the cash and immovable properties are relevant to the alleged conspiracy to commit money laundering charged in count 1. Even if defendants only profited a half-million dollars from this alleged conspiracy, the existence of the cash, bank accounts, and immovable properties is relevant to proving that defendants concealed and disguised their allegedly fraudulent income. In order to convict defendants of a money laundering conspiracy (and, indeed, any other crime charged in the superseding indictment), the government is required to prove criminal intent. *United States v. Valdez*, 529 F. App'x 396, 397 (5th Cir. 2013); 18 U.S.C. § 1956(h). The evidence that defendants "deposited, layered, transferred, and thoroughly commingled" the money they obtained through the alleged conspiracy with their regular income is circumstantial evidence of criminal intent. In order to demonstrate that defendants "conceal[ed] and disguis[ed] the fraud proceeds," the government should be permitted to introduce evidence of the accounts and properties defendants maintained. Those accounts and properties are relevant to the government's conspiracy charges.[17]

---

[16] As the government argues: "That the defendants possessed cash and account balances well in excess of their overall reported income is directly relevant to the allegation that they falsely reported their income on their three most recent sets of corporate and individual tax returns." R. Doc. No. 216, at 3. The government also correctly points out that the defendants' total assets are relevant to the conspiracy to defraud the United States by obtaining financial aid for their daughter's college education, as charged in count 32. *See* R. Doc. No. 216, at 3-4.

[17] Moreover, even if the Court did conclude that the cash and immovable properties were not relevant to all counts of the superseding indictment, any risk that the evidence would unduly prejudice defendants as to the remaining counts would be adequately cured by a limiting instruction—not wholesale exclusion of the evidence. *See Zafiro v. United States*, 506 U.S. 534, 539 (1993) ("When the risk of prejudice is high, a district court is more likely to determine that separate trials are necessary, but . . . less drastic measures, such as limiting instructions, often will suffice to cure any risk of prejudice."). At trial, defendants may request an appropriate limiting instruction relative to the purpose for which such evidence may be considered.

The Court also concludes that Rule 403 does not warrant exclusion of the cash and immovable properties. Rule 403 provides that relevant evidence may be barred "if its probative value is substantially outweighed by a danger of . . . unfair prejudice, confusing the issues, misleading the jury, [causing] undue delay, wasting time, or needlessly presenting cumulative evidence." Fed. R. Evid. 403. "'Relevant evidence is inherently prejudicial; but it is only unfair prejudice, substantially outweighing probative value, which permits exclusion of relevant matter under Rule 403.'" *Jowers v. Lincoln Elec. Co.*, 617 F.3d 346, 356 (5th Cir. 2010) (quoting *United States v. McRae*, 593 F.2d 700, 707 (5th Cir. 1979)) (alterations omitted).

While admission of evidence relating to the $5,245,615 in cash and the eight immovable properties seized by the government is certainly prejudicial to defendants, it is not unfairly prejudicial. As explained above, this evidence is highly probative of defendants' alleged financial crimes. To the extent defendants are concerned that the government will use the large amount of cash to sensationalize the charges or make other improper arguments, the government has indicated that it will not do so and, upon proper objection, the Court will hold the government to its word.[18] Accordingly, the Court concludes that the probative value of the $5,245,615 in cash and the eight immovable properties is not substantially outweighed by the danger of unfair prejudice, confusing the issues, misleading the jury, causing undue delay, or wasting time.[19]

---

[18] R. Doc. No. 216, at 6.

[19] The Court additionally notes that, during voir dire, sufficient inquiry will be made to ensure that the jury can be fair and impartial. To that end, the Court reminds the parties that they may submit proposed voir dire questions with the Court identifying any specific concerns they may wish to address.

II. **Motion to prevent reference to the guns seized at 81 Chateau Du Lac filed by the corporate defendants**

Defendants ask the Court "for an order to the effect that the government cannot use pictures or evidence or make mention of guns or weapons found at 81 Chateau Du Lac on March 10, 2015."[20] This motion is mooted by the government's assurance that it does not intend to introduce or reference the guns in any way during its case-in-chief.[21]

An additional issue raised in the government's response to the motion is nevertheless worth briefly addressing. The government is concerned that defendants will attempt at trial to relitigate or argue the legality of the government's search warrants and execution of those warrants at defendants' residence and place of business on March 10, 2015. It asks the Court "to reiterate that the search's legality and manner has been fully litigated and [to] order that the legality or propriety of the government's conduct in obtaining and executing the warrants should not be raised at trial at all."[22] As the government is correct that this issue was fully litigated and decided,[23] the Court agrees with the government that no party should reference or argue the legality of the government's search warrants or the searches themselves at trial.

---

[20] R. Doc. No. 204, at 2.
[21] R. Doc. No. 218, at 1-2. The government does not, however, concede its inability to reference the assault rifle found at defendants' business as part of its response should defendants attempt to introduce evidence of a robbery that occurred at their business in 2013 as an excuse for not filing certain Currency Transaction Reports ("CTRs"). R. Doc. No. 218, at 2 n.2. The Court will address the admissibility of the assault rifle upon appropriate objection if and when that issue materializes at trial.
[22] R. Doc. No. 218, at 2.
[23] R. Doc. Nos. 138, 154.

### III.   Motion to prevent Special Agent Matthew Reidell from giving opinion testimony as to criminal intent and defendants' state of mind filed by the corporate defendants

Defendants move to preclude government witness, Special Agent Matthew Reidell ("Agent Reidell"), "from giving *his* personal opinion as to criminal intent or defendants' state-of-mind."[24] They extensively cite the affidavit that Agent Reidell signed in support of the government's search warrant applications, and argue that the court should "enter an order, *in limine* precluding the government from introducing any testimony or evidence of criminal intent."[25]

First, as the government points out in its brief opposing the motion, absent an unforeseen circumstance at trial, it is not anticipated that the search warrant affidavit will be offered as evidence. The government instead intends to call Agent Reidell as both a fact and expert witness.[26] Second, the government is required to prove defendants' criminal intent in order to establish defendants' guilt as to each of the offenses charged. It follows that to the extent defendants request that the government introduce no evidence as to an essential element of the offenses,[27] that request must be denied.

As for defendants' motion for a pre-trial order that no government witness testify in violation of Rule 704(b) of the Federal Rules of Evidence, such an order is unnecessary. It goes without saying that all testimony and evidence introduced in this case must comply with the Rules of Evidence, including Rule 704(b). That Rule states that "[i]n a criminal case, an expert witness must not state an opinion about whether the defendant did or did not have a mental state or condition that constitutes an element of the crime charged or of a defense [because] [t]hose matters

---

[24] R. Doc. No. 205-1, at 1.
[25] R. Doc. No. 205-1, at 7.
[26] R. Doc. No. 219, at 4.
[27] R. Doc. No. 205-1, at 6-7.

are for the trier of fact alone." Fed. R. Evid. 704(b). The government has indicated that "no one will testify in violation of Rule 704(b)."[28]

Of course, Rule 704(b) does not prohibit the government from introducing *any evidence* of defendants' criminal intent. Indeed, both direct and circumstantial evidence may be used to satisfy each element of the alleged conspiracy, though direct evidence is not necessary. *United States v. Hernandez*, 479 F. App'x 636, 639 (5th Cir. 2012) (citation omitted) ("Direct evidence of a conspiracy is unnecessary; each element may be inferred from circumstantial evidence."). Rather, Rule 704(b) simply operates to ensure that the government's expert does not offer an "ultimate legal conclusion" as to the defendant's intent. *See United States v. Speer*, 30 F.3d 605, 610 (5th Cir. 1994). The U.S. Fifth Circuit Court of Appeals has made clear that an expert may instead offer only "a mere explanation of the expert's analysis of the facts which would tend to support a jury finding on the ultimate issue." *Id.*

Whether any of Agent Reidell's testimony impermissibly crosses that line is a determination that this Court will make at trial upon an appropriate motion. For now, the Court simply reiterates that no government witness, including Agent Reidell, may offer legal conclusions with respect to defendants' states of mind or offer any testimony that amounts to the functional equivalent of such a conclusion. *See United States v. Vicknair*, No. 03-16, 2005 WL 1400443, at *8 (E.D. La. June 2, 2005) (Africk, J.) (citing *United States v. Gutierrez-Farias*, 294 F.3d 657, 662 (5th Cir. 2002)) (excluding a government expert's anticipated testimony that the fraudulent nature of promissory notes "should have been evident to anyone [in the defendant's] business" after concluding that this testimony was "the 'functional equivalent' of a direct statement of defendant's state of mind," and so violated Rule 704(b)).

---

[28] R. Doc. No. 219, at 2.

IV. **Motion to prevent reference to the conspiracy to commit money laundering and from introducing any statements by alleged co-conspirators and for a *James* hearing filed by the corporate defendants**

Defendants' final motion seeks "an order precluding any reference to the jury by the government or any of its witnesses of a Conspiracy to Commit Money Laundering" and requests a hearing pursuant to *James*, 590 F.2d 575, in order to determine the admissibility of alleged co-conspirators' statements.[29] They argue that "[t]here is a manifest vacuum in the indictment when it comes to articulating the elements of a conspiracy and that vacuum will remain empty at trial."[30]

The government responds that, although defendants' motion is styled as a motion *in limine*, it largely attacks "the legal sufficiency of the indictment," "the specificity of the allegations," and "the putative factual sufficiency of the government's case."[31] These issues have already been decided by the Court in connection with defendants' motion to dismiss the indictment and motion for a bill of particulars.[32]

With respect to defendants' request for a *James* hearing, the government observes that before admitting co-conspirator statements the court does have a procedural duty to make findings upon appropriate motion. Nevertheless, the government contends that a pre-trial hearing is unnecessary and would result in "a mini-trial before the trial."[33] Instead, and as instructed by more recent Fifth Circuit precedent on the subject, the government argues that the court should carry the *James* motion through trial (or at least through the presentation of the government's case) and

---

[29] R. Doc. No. 214, at 1.
[30] R. Doc. No. 214-1, at 2.
[31] R. Doc. No. 220, at 1.
[32] The government cites R. Doc. Nos. 47 (motion to dismiss the indictment), 82 (order dismissing motion to dismiss because it did not address charges added in the superseding indictment), 137 (motion for a bill of particulars), 157 (U.S. Magistrate Judge North's order denying the motion for a bill of particulars), 163 (motion to dismiss counts 23-32 of the superseding indictment), and 176 (order denying the motion to dismiss counts 23-32).
[33] R. Doc. No. 220, at 1-2.

10

conditionally admit the co-conspirator statements "until a determination of the existence of the Rule 801(d)(2)(E) predicate facts."[34] *See United States v. Fragoso*, 978 F.2d 896, 900 (5th Cir. 1992).

While the government is correct that defendants' motion essentially attacks the sufficiency of the conspiracy allegations in the superseding indictment, the government is incorrect in asserting that the Court has previously addressed this issue. Defendants did file a motion[35] to dismiss the conspiracy count, but the Court denied[36] that motion only on the ground that it did not address the charges added in the superseding indictment. To the extent that defendants again contend that the government lacks any evidence to support the conspiracy count, however, their argument is easily resolved.

As this Court recently explained in *United States v. Perralta*, No. CR 15-68, 2016 WL 258630, at *2 (E.D. La. Jan. 21, 2016) (Africk, J.), "[t]here is no federal criminal procedural mechanism that resembles a motion for summary judgment in the civil context." *Id.* (citing *United States v. Yakou*, 428 F.3d 241, 246 (D.C. Cir. 2005); *United States v. Mann*, 517 F.2d 259, 267 (5th Cir. 1975) ("A defendant may not properly challenge an indictment, sufficient on its face, on the ground that the allegations are not supported by adequate evidence, for an indictment returned by a legally constituted and unbiased grand jury, if valid on its face, is enough to call for trial of the charge on the merits.")). Defendants' attack on the legal sufficiency of the conspiracy evidence cannot be entertained until the close of the government's case-in-chief at trial; it is not appropriate at this stage in the proceedings. *See United States v. Alarcon*, 261 F.3d 416, 421 (5th Cir. 2001).

---

[34] R. Doc. No. 220, at 3.
[35] R. Doc. No. 47.
[36] R. Doc. No. 82.

As for defendants' argument that alleged co-conspirator statements be excluded, the Court defers such specific evidentiary rulings until such time as they are raised at trial. *See Fragoso*, 978 F.2d at 899 (*James* has never required a hearing outside the presence of the jury to determine the existence of a conspiracy); *United States v. Richmond*, No. 00-321, 2001 WL 1117235, at *4 (E.D. La. Sept. 21, 2001) ("The Fifth Circuit has approved the practice of withholding ruling on these preliminary facts until the trial has concluded."); *United States v. Whitley*, 670 F.2d 617 (5th Cir. 1982) (citation omitted) ("Where no separate hearing is held, but, at the end of the trial, the trial judge finds . . . that a preponderance of the evidence proves the predicate facts, no error has occurred in the admission of the coconspirator statements."). This is the best course of action, especially given that defendants do not actually identify a single co-conspirator statement to which they object.[37]

## CONCLUSION

For the foregoing reasons,

**IT IS ORDERED** that defendants' motions[38] *in limine* are **DENIED**. Defendants may, however, re-assert any objections at trial as set forth herein.

New Orleans, Louisiana, March 21, 2016.

_____
LANCE M. AFRICK
UNITED STATES DISTRICT JUDGE

---

[37] *See generally* R. Doc. No. 214. The Court finally notes that when evaluating the admissibility of the statements by alleged co-conspirators, the Court may consider the statements themselves in conjunction with other evidence of conspiracy to satisfy the predicate for admission. *Fragoso*, 978 F.2d at 900 (citing *Bourjaily v. United States*, 483 U.S. 171, 181 (1987).
[38] R. Doc. Nos. 203, 204, 205, 208, 214.